Mary C. Geddes
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>HURIST JOUBERT,<br><br>　　　　　　　Defendant. | Case No. 3:97-cr-0065-JKS<br><br>**MOTION TO REDUCE SENTENCE** |

I.  <u>Nature of Motion</u>

Defendant Jurist Joubert, by and through counsel Mary C. Geddes, Assistant Federal Defender, moves this court for resentencing pursuant to 18 U.S.C. § 3582(c)(2).  This statute provides jurisdiction to a district court to reduce the sentence of a defendant "who has been sentenced to a term of imprisonment based upon a sentencing range that has subsequently been lowered by the Sentencing Commission."  <u>Id.</u>

II. Jurisdiction

This court has jurisdiction under § 3582(c)(2)[1] and the discretion to ameliorate the long sentence imposed in this case. Because the Sentencing Commission has approved retroactive application of an amendment to the crack cocaine guideline,[2] and because the court's sentencing decision in this case was based upon the "old" guideline for the scoring of crack cocaine offenses, at a minimum, Mr. Joubert is eligible for resentencing under 18 U.S.C. § 3582(c)(2).

---

[1] 18 U.S.C. § 3582(c)(2) provides:
   In the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission.

[2] On November 1, 2007, the United States Sentencing Commission issued amendments to the crack guidelines which lowered the penalties for most crack cocaine offenses. This action was taken in response to studies which raised grave doubts about the fairness and rationale of the 100-to-1 crack/powder ratio incorporated in the sentencing guidelines. See generally UNITED STATES SENTENCING COMMISSION, REPORT TO CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY (May 2007); UNITED STATES SENTENCING COMMISSION, REPORT TO CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY (May 2002); UNITED STATES SENTENCING COMMISSION, SPECIAL REPORT TO CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY (February 1995). See also Kimbrough v. United States, 128 S. Ct. 558, 568-69 (2007) (discussing history of crack cocaine guidelines and various Sentencing Commission reports). On December 11, 2007, the Commission voted to apply the crack amendments retroactively to cases sentenced before November 1, 2007. See 73 Fed. Reg. 217-01 (2008). In conjunction with voting to apply the crack amendments retroactively in November 2007, the Commission also significantly modified U.S.S.G. § 1B1.10, the guideline concerning retroactive application of amendments. In April 2008, the Commission further amended the sentencing guidelines to change the drug equivalency calculation between crack cocaine and marijuana in poly-drug cases. This newest change became effective May 1, 2008, and is retroactive.
   Through these amendments, the Commission has sought a simple correction of the base offense level for the prior disproportionate treatment of crack cocaine relative to powder cocaine. In most cases, the anticipated result for the eligible defendant will be a two-level decrease in the base offense level for controlled substances offenses.

### III. Mr. Joubert's Status

Hurist Joubert was convicted of drug trafficking crimes. His sentence was imposed in 1999 under the Sentencing Guidelines with the base offense level computed under § 2D1.1. The court sentenced Mr. Joubert to a sentence of 210 months' imprisonment; the high end of the pertinent sentencing range of 168 to 210 months.

According to the Bureau of Prisons' website, Mr. Joubert's anticipated release date is September 9, 2012. Mr. Joubert has been in custody in this case since June 11, 1997.

According to the United States Attorney, Mr. Joubert has not had any disciplinary problems while incarcerated by the BOP.

### IV. Mr. Joubert's Sentence

Hurist Joubert was originally charged in 1997, by indictment, with five counts of distribution of a controlled substance and one count of possession with intent to distribute a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1).[3]

Following a judge trial on July 9, 1999, Mr. Joubert was convicted on three counts of distribution (3, 4, 5) and one count of possession with intent to distribute (6). Two counts (1, 2) were dismissed by the government due to the unavailability of an informant.

In determining the sentence for these drug offenses, the district court utilized the quantities of crack cocaine in the counts of conviction, as well as in the dismissed counts. The court also determined that funds found in Mr. Joubert's possession could be converted into quantities of

---

[3] The indictment did not identify the quantities nor the controlled substance involved on each occasion alleged. Nor did the indictment itself allege any penalty provisions, even though two of the alleged acts involved quantities (more than 5 grams of crack cocaine) which implicated enhanced penalties. See 21 U.S.C. § 841(b).

presumed crack cocaine, even though Mr. Joubert was also known to sell powder cocaine. Page 9, n.2. Indeed, 56 grams, far more than half of the total half of the 'crack' cocaine counted and scored against Mr. Joubert, were hypothetical.

The quantities of cocaine found by the district court are listed below.

| Count | Offense | Quantity/Type |
|---|---|---|
| 1- dismissed | distribution | 2.5 gr crack |
| 2- dismissed | distribution | 2.7 gr crack |
| 3 - convicted | distribution | 5.8 gr crack |
| 4 - convicted | distribution | 2.6 gr crack |
| 5 - convicted | distribution | 2.8 gr crack |
| 6 - convicted | possession with intent to distribute | 4.2 gr crack<br>1.4 gr powder<br>5.5 gr crack |
| money in defendant's possession | | ($3,467 = approximated as 56 gr. crack) |

The court agreed with the PSR writer's calculations under § 2D1.1. Specifically, the court agreed that the quantity of crack and powder cocaine amounted to a base offense level of 32.

The sentencing court also allowed Mr. Joubert a downward adjustment for acceptance of responsibility because Mr. Joubert had waived jury and only asked for a trial for purposes of preserving a motion to suppress.

At a total offense of 30, in a criminal history category of VI, the sentencing range was 168 to 210 months. Mr. Joubert was sentenced to 210 months, the high end of the range.

V.  Relief Sought

Mr. Joubert seeks a reduction in accordance with Amendment 706 of the Sentencing Guidelines, which altered the drug quantity table in U.S.S.G. § 2D1.1(c). He should receive a two-level reduction of the offense level, as authorized by the Sentencing Commission. The base offense level under § 2D1.1 was 32; it should be corrected to "30." Mr. Joubert's total offense level should be lowered from 30 to 28, and the Guideline range reduced from 168-210 months to 140-175.

However, the Court is not limited in its resentencing to consideration of the proposed reduction. At the time of Mr. Joubert's original sentence, this court was required to treat the Guidelines as mandatory under the controlling law at the time. Since then, the Supreme Court has held that the Guidelines in their mandatory form are unconstitutional and – though severing 18 U.S.C. § 3553(b) – made them "effectively advisory." United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), and subsequent Supreme Court cases clarifying it – namely Rita v. United States, 551 U.S. ___, ___-__, 127 S. Ct. 2456, 2464 (2007) (stating that courts "may depart (either pursuant to the Guidelines or, since Booker, by imposing a non-Guidelines sentence)"); Gall v. United States, 552 U.S. ___, ___, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007) (a sentence outside the Guidelines carries no presumption of unreasonableness); and Kimbrough v. United States, 552 U.S. ___, ___, 128 S. Ct. 558, 578, 169 L. Ed. 2d 481 (2007) (district courts' freedom to deviate from 100-to-one ratio did not violate sentencing statute's "unwarranted sentence disparities" provision; and district court may conclude that Guidelines' crack cocaine/powder cocaine disparity yields sentence "greater than necessary") – have created a different sentencing scheme in which the Guidelines are but one of the several factors to be considered under 18 U.S.C. § 3553(a). The "overarching provision" in Booker sentencings is the requirement that courts

"impose a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing. Kimbrough, 128 S. Ct. at 570. Therefore, Mr. Joubert also seeks a sentence reduction to a time-served disposition because the guideline sentence imposed was greater than necessary to achieve § 3553(a)'s purposes.

### VI. The Crack-Cocaine Disparity Justifies Further Reduction

Here, there are a number of non-guidelines factors that justify a sentence below even the new guideline range.

The Supreme Court held that "under Booker, the cocaine Guidelines, like all other Guidelines, are advisory only, and that the district court [in Kimbrough] erred in holding the crack/powder disparity mandatory." Id. at 564. As a result, this court is free to "conclude . . . that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." Id. at 563.

The Supreme Court's decision in Kimbrough was grounded in the research and recommendations of the United States Sentencing Commission itself, which has acknowledged that the crack/powder disparity in the Guidelines is deeply flawed. Id. at 568 (citing Commission's conclusion in its 2002 report to Congress that the disparity "fails to meet the sentencing objectives set forth by Congress in both the Sentencing Reform Act and the 1986 [Anti-Drug Abuse] Act").[4] Indeed, based on its research, the Commission has recommended at different times that Congress

---

[4] Among the flaws in the Guideline are: (1) "the assumptions about the relative harmfulness of the two drugs and the relative prevalence of certain harmful conduct associated with their use and distribution;" "the 'anomalous' result that retail crack dealers get longer sentences than the wholesale drug distributors who supply them the powder cocaine from which their crack is produced;" and "the severe sentences . . . imposed 'primarily upon black offenders.'" Id. at 568.

reduce the disparity to 20 to 1, 5 to 1, and as low as 1 to 1. Id. at 569 (citing Commission's 1995, 1997, and 2002 reports). Most recently, when it submitted its proposed two-level reduction in the crack Guideline, the Commission recommended that Congress further "substantially" reduce the ratio. Id. at 569 (citing Commission's 2007 report).

The Commission recommended further reductions in the ratio because even the amended crack guideline still yields grossly disproportionate sentences. In Kimbrough, the Supreme Court characterized the amendment as "modest," noting that it "now advances a crack/powder ratio that varies (at different offense levels) between 25 to 1 and 80 to 1" – well above the Commission's recommended ratios. Id. at 573. Thus, the Court found, "[t]he amended Guidelines still produce sentencing ranges keyed to the mandatory minimums in the 1986 Act," which it identified as the source of the unwarranted disparity between the crack and powder cocaine Guidelines to begin with. Id. at 569 n.10. Indeed, even the Commission has admitted that the amendment is "'only . . . a partial remedy' for the problems generated by the crack/powder disparity." Id. at 569 (citing Commission's 2007 report).

Because the amended guideline still results in sentences that are based on an unwarranted disparity and fail to serve the purposes of sentencing, this Court should impose a lower sentence in this case. Id. at 576 ("the District Court properly . . . accord[s] weight to the Sentencing Commission's consistent and emphatic position that the crack/powder disparity is at odds with § 3553(a)"). Kimbrough's rationale for varying from the crack guidelines therefore remains even after the new guideline is applied.

In addition to the problems with the crack/powder ratio generally, the disparity reflected in the Guidelines range is "too vast . . . as applied to the particular defendant that appears

before the court," given that more than half of the "crack" attributed to Mr. Joubert was presumed and not proven. See United States v. Ricks, 494 F.3d 395, 403 (3d Cir. 2007); see also United States v. Gunter, 462 F.3d 237, 249 (3d Cir. 2006) ("district courts may consider the crack/powder cocaine differential in the Guidelines as a factor . . . in the post-Booker sentencing process"). Kimbrough made clear that this Court may "properly home[] in on the particular circumstances of [the] case" in imposing a lower than Guidelines sentence in a crack case. The circumstances here warrant a lower sentence.

In 1986, when Congress instituted the 100 to one ratio for statutory mandatory minimums, one of the primary reasons offered for the differential was an assumption that high levels of violence were associated with crack cocaine trafficking; likewise, it was widely assumed that many crack cocaine offenses involved distribution to minors or pregnant women. These assumptions, however, have proven unfounded. See U.S. Sentencing Comm'n, REPORT TO THE CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY (May 2002) at vi, vii, 91, 94-96. Moreover, they are not present in Mr. Joubert's case.

As the Sentencing Commission has concluded, the "100-to-1 . . . ratio is a primary cause of the growing disparity between sentences for Black and White federal defendants." U.S. Sentencing Comm'n, SPECIAL REPORT TO THE CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY (Feb. 1995) at 163; see also U.S. Sentencing Comm'n, REPORT TO THE CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY (May 2002) ("2002 Report") at 102-03. Even though the drug guideline is not designed deliberately to sentence minorities more harshly, the fact remains that it does in practice when crack cocaine cases are at issue. That will occur here, in Mr. Joubert's case. The practice of meting out punishment that is harsher to one group than another corrodes belief in

equal justice under the law.  See Kimbrough, 128 S. Ct. at 568; 2002 Report at 103.  This Court should therefore consider reducing Mr. Joubert's sentence below the new Guidelines range to reduce the disparity.

DATED this 26th day of June, 2008.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

/s/ Mary C. Geddes
Assistant Federal Defender
Alaska Bar No. 8511157
601 West 5th Avenue, Suite 800
Anchorage, AK  99501
Ph:  (907) 646-3400
Fax:  (907) 646-3480
mary_geddes@fd.org

Certification:

I certify that on June 26, 2008, a copy of the foregoing document, with attachments, was served electronically on:

Audrey J. Renschen, Esq.

/s/ Mary C. Geddes